

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-7363

Re: Proper procedure in
assessing, levying
and collecting ad
valorem taxes on the
property in question,
which is not in any
county, and is not
attached to any county
for the purpose of
taxation.

We have given careful consideration to your
request for opinion on the captioned subject, which
reads as follows:

"The question has arisen in this de-
partment as to the proper procedure in
assessing, levying and collecting ad valorem
taxes on property in the Gulf of Mexico,
which is not contained in the boundaries of
Galveston County or any other county and is
not specifically attached to any county for
the purpose of taxation.

"The property in question has been leased
by the General Land Office to a certain Oil
Company, and the Oil Company now has production
on said lease and desires to pay the ad valorem
taxes accruing to the State. It is our under-
standing that the Oil Company will deny liability
as to any county or subdivision tax.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George H. Sheppard, Page 2

"I shall thank you to advise me the proper procedure to follow in making the assessment, levy and collection."

By treaty with Spain in the year 1819, the United States expressly renounced all claim to the territory which is now the State of Texas. While a sovereign nation, and prior to her annexation, Texas declared by act of her Congress, that civil and political jurisdiction of the Republic of Texas extended to the following boundary along the seacoast:

"Beginning at the mouth of the Sabine River, and running West along the Gulf of Mexico three leagues from land to the mouth of the Rio Grande . . ." 1 Gammel's Laws, 1193.

Thereafter, the annexation of the Republic of Texas was accomplished by a joint resolution of Congress, wherein it was provided that:

"Said state, when admitted into the Union, . . . shall retain all the public funds, debts, taxes, and dues of every kind which may belong to or be due and owing said Republic; and shall also retain all the vacant and unappropriated land lying within its limits, to be applied to the payment of the debts and liabilities of said Republic of Texas, and the residue of said lands, after discharging said debts and liabilities, to be disposed of as said state may direct . . ."

Galveston County was created by an Act of the Congress of the Republic of Texas on May 15, 1838. 1 Gammel's Laws 1483. The boundaries were redefined in 1839, and again in 1841, which latter delineation remains in effect. The calls begin at a point "on the shores of the Gulf of Mexico," and after setting the east, north and west lines of the county, the act continues:

Honorable George H. Sheppard, Page 3

". . . thence eastwardly along the Gulf
shores, to the place of beginning." (Emphasis
added).

It is apparent, then, that the submerged lands
between the shores of the Gulf of Mexico and the three
league limit are territory of the State but are not in-
cluded in the limits of any county.

Article VIII, Section 1 of the Constitution of
Texas provides that:

". . . All property in this State . . .
shall be taxed in proportion to its value,
which shall be ascertained as may be provided
by law . . ."

Section 11 of Article VIII provides that:

"All property, whether owned by persons
or corporations shall be assessed for taxa-
tion, and the taxes paid in the county where
situated, . . . And all lands and other
property not rendered for taxation by the
owner thereof shall be assessed at its fair
value by the proper officer."

Section 12 of Article VIII provides that:

". . . Lands lying in the territory not
laid off into counties shall be assessed and
the taxes thereon collected at the office of
the Comptroller of the State."

Pursuant to these Constitutional provisions the
Legislature has enacted the following:

Article 7226, providing that " . . . Lands lying
in the territory not laid off into counties, shall be
assessed by the Comptroller in accordance with such regu-
lations as he may adopt and establish for that purpose."

Honorable George H. Sheppard, Page 4

Article 7231, which provides:

"Assessment of lands rendered to the
Comptroller under the provisions of this
chapter shall be made by the party rendering
the same under oath as to their value; but
if the Comptroller thinks the valuation too
low he shall object; and if the Comptroller
and the party rendering the land cannot
agree, then the Comptroller shall assess
the same at such value as he may think it
is worth; and, if the party rendering feels
that the assessment is too high, he may
appeal to the board of equalization, which
for such purposes shall consist of the
Governor, Attorney General and the Secretary
of State, and their decision shall be final."

Article 7293, which provides that "The taxes
. . . upon lands situated in the territory not laid off
into counties, shall be paid and collected at the office
of the Comptroller, under such regulations as he may
adopt for that purpose."

These constitutional and statutory provisions
set out all the essentials of the assessing and collecting
structure on the taxable interests in land in the terri-
tory in question. The details and mechanics are left to
the Comptroller's rule-making power given him by the
statutes quoted.

The levying of the tax on the territory inquired
about is included in the levy fixed by the board provided
for in Article 7041, which is composed of the Governor,
the Comptroller and the State Treasurer. A levy of taxes,
as is pointed out by Cooley, is the act which fixes the
subject and rate of taxation. III Cooley Taxation (4th
Ed.) 2044, Sec. 1012. The subject of taxation is fixed
by Article VIII, Section 1, of the Constitution and Article
7043, viz., "all property within this State," and only the
fixing of the rate is delegated to the board according to
the formula set out in said Article 7043. This rate so
fixed is applicable to the territory here considered.

Honorable George H. Sheppard, Page 5

your inquiries.

We trust that the foregoing sufficiently answers

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Arthur L. Moller
Assistant

APPROVED OCT 3, 1946

ATTORNEY GENERAL OF TEXAS

ALM:ms

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN